# Exhibit 1

| | |
|---|---|
| **From:** | Helene Hechtkopf |
| **Sent:** | Thursday, May 14, 2020 4:14 PM |
| **To:** | Lehrburger NYSD Chambers |
| **Cc:** | Ira Lipton; Lejla Hadzic; Miriam Manber |
| **Subject:** | RE: Marrett v. MTA (19-cv-5144) |

Dear Judge Lehrburger,

We spoke with Access-A-Ride today to clarify the reason why blue & white dedicated carrier vehicles would have a different notification process than broker vehicles under our proposal, and specifically, why the passengers would be provided with the driver's cell phone number for broker vehicles but not for blue and white vehicles.

The answer to the Court's question is that dispatch communicates with blue and white vehicle drivers through a two-way radio system that is installed in all of the vehicles. Each blue and white paratransit vehicle is assigned to a single base with dispatchers that are in close contact with the driver throughout the route using this two-way radio.

By contrast, broker service is decentralized – there are multiple bases, and they contract with a variety of drivers, many of whom are independent carriers who also drive for other services. The normal method of communication between broker bases and their drivers is through cell phones.

Respectfully submitted,
Helene Hechtkopf


Helene R. Hechtkopf

**HOGUET NEWMAN REGAL & KENNEY**LLP

One Grand Central Place
60 East 42nd Street, 48th Floor
New York, New York 10165
T 212.689.8808 | F 212.689.5101

This email transmission constitutes an electronic communication within the meaning of the Electronic Communications Privacy Act, 18 U.S.C. Section 2510, and its disclosure is strictly limited to the recipient(s) intended by the sender of this message. This transmission, and any attachments, may contain confidential attorney-client privileged information and attorney work product. Any unauthorized disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is prohibited. If you are not an intended recipient, please notify the sender by reply email and immediately delete and/or destroy the original transmission and any attachments.

**From:** Lehrburger NYSD Chambers <Lehrburger_NYSDChambers@nysd.uscourts.gov>
**Sent:** Friday, May 8, 2020 6:12 PM
**To:** Helene Hechtkopf <hhechtkopf@hnrklaw.com>
**Cc:** Ira Lipton <ILipton@hnrklaw.com>; Lejla Hadzic <lhadzic@hnrklaw.com>; Miriam Manber <mmanber@hnrklaw.com>
**Subject:** RE: Marrett v. MTA (19-cv-5144)

Counsel - Thank you for the below. Coincidentally, I spoke with Plaintiff's counsel this morning. Please contact chambers next week (phone or email) to set up a day and time to discuss.

**From:** Helene Hechtkopf <hhechtkopf@hnrklaw.com>
**Sent:** Friday, May 8, 2020 1:02 PM
**To:** Lehrburger NYSD Chambers <Lehrburger_NYSDChambers@nysd.uscourts.gov>
**Cc:** Ira Lipton <ILipton@hnrklaw.com>; Lejla Hadzic <lhadzic@hnrklaw.com>; Miriam Manber <mmanber@hnrklaw.com>
**Subject:** RE: Marrett v. MTA (19-cv-5144)

Dear Judge Lehrburger,

After your previous email, we went back to Access-A-Ride to discuss whether there is anything else we could put on the table. After many discussions about what we already offer our customers and what is feasible and practical, we have come back with the following proposal. We believe this proposal addresses the concerns that the plaintiffs raised at our in-person settlement conference.

**Broker Vehicles** will have a three-step notification process on the day of the ride:
- 15 minutes prior to pick up the customer will receive a text message with the driver's cell phone number.
- When the car arrives for at the pickup location, the passenger will get a text including identifying information about the car and the driver's cell phone number.
- If the driver does not see the customer, the driver will call the customer directly.
- The driver cannot leave the pickup location until authorized to do so by the dispatcher.

**Blue & white** vehicles will have a three-step notification process on the day of the ride:
- 15 minutes prior to pick up the customer will receive an automated call letting them know the vehicle is approximately 15 minutes away;
- When the car arrives at the pickup location, the driver will call out the name of the customer.
- If the driver is unable to find the customer, the driver will work with the dispatcher to contact and locate the customer. Every customer will be called if there is a problem with the connection.
- The driver cannot leave the pickup location until authorized to do so by the dispatcher.

While these practices have been informally practiced by some drivers (both of broker and blue and white vehicles) for the past few months, they will become formal AAR policies.

For broker vehicles, AAR will amend its training requirements in the next RFP to require that this notification process be included in the training, and will send a directive to its brokers informing them that they must implement this practice immediately.

For blue and white vehicles, AAR will send a directive to the companies instructing them to include this in their training module for new drivers and as part of refresher training.

We would be happy to have a call to discuss the proposal with the Court in greater detail.

Respectfully,
Helene Hechtkopf


Helene R. Hechtkopf
**HOGUET NEWMAN REGAL & KENNEY**LLP
One Grand Central Place

60 East 42nd Street, 48th Floor
New York, New York 10165
T 212.689.8808 | F 212.689.5101

This email transmission constitutes an electronic communication within the meaning of the Electronic Communications Privacy Act, 18 U.S.C. Section 2510, and its disclosure is strictly limited to the recipient(s) intended by the sender of this message. This transmission, and any attachments, may contain confidential attorney-client privileged information and attorney work product. Any unauthorized disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is prohibited. If you are not an intended recipient, please notify the sender by reply email and immediately delete and/or destroy the original transmission and any attachments.

**From:** Helene Hechtkopf
**Sent:** Friday, May 1, 2020 11:58 AM
**To:** 'Lehrburger NYSD Chambers' <Lehrburger_NYSDChambers@nysd.uscourts.gov>
**Cc:** Ira Lipton <ILipton@hnrklaw.com>; Lejla Hadzic <lhadzic@hnrklaw.com>; Miriam Manber <mmanber@hnrklaw.com>
**Subject:** RE: Marrett v. MTA (19-cv-5144)

Dear Judge Lehrburger,

I apologize for our delay in responding to your email.

After receiving Your Honor's email, we began working with Access-A-Ride to see if we could identify any other programmatic changes that we could put on the table in this mediation. Our discussions with our client have been delayed because they are tied up dealing with the crisis. However, we anticipate that we will have more information for you about our discussions with Access-A-Ride next week.

Respectfully,
Helene Hechtkopf

Helene R. Hechtkopf

**HOGUET NEWMAN REGAL & KENNEY LLP**

One Grand Central Place
60 East 42nd Street, 48th Floor
New York, New York 10165
T 212.689.8808 | F 212.689.5101

This email transmission constitutes an electronic communication within the meaning of the Electronic Communications Privacy Act, 18 U.S.C. Section 2510, and its disclosure is strictly limited to the recipient(s) intended by the sender of this message. This transmission, and any attachments, may contain confidential attorney-client privileged information and attorney work product. Any unauthorized disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is prohibited. If you are not an intended recipient, please notify the sender by reply email and immediately delete and/or destroy the original transmission and any attachments.

**From:** Lehrburger NYSD Chambers <Lehrburger_NYSDChambers@nysd.uscourts.gov>
**Sent:** Saturday, April 25, 2020 5:04 PM
**To:** Helene Hechtkopf <hhechtkopf@hnrklaw.com>
**Cc:** Ira Lipton <ILipton@hnrklaw.com>; Lejla Hadzic <lhadzic@hnrklaw.com>; Miriam Manber <mmanber@hnrklaw.com>
**Subject:** RE: Marrett v. MTA (19-cv-5144)

Counsel - Thank you for the informative response below. It seems to me that your client is digging in deeper and not offering up anything (other than the RFP requirements, which they are planning to include in any event). The case is not

going to settle with only that.  I know Mr. Lee said he was not interested in an offer based on just the two plaintiffs, but if there is something possible there, I think it's worth proposing.

Please call my chambers this coming week to arrange a time to speak with me.

Thank you.

---

**From:** Helene Hechtkopf <hhechtkopf@hnrklaw.com>
**Sent:** Friday, April 24, 2020 6:10 PM
**To:** Lehrburger NYSD Chambers <Lehrburger_NYSDChambers@nysd.uscourts.gov>; Ira Lipton <ILipton@hnrklaw.com>; Lejla Hadzic <lhadzic@hnrklaw.com>; Miriam Manber <mmanber@hnrklaw.com>
**Subject:** RE: Marrett v. MTA (19-cv-5144)

Dear Judge Lehrburger,

We write to respond to the questions raised by opposing counsel that you listed below, as well as to give additional context to the offer we are willing to make to settle this case.

**1.  What exactly do Defendants mean by call-out-and-assist -- will this include a requirement for the driver to call the customer's mobile number and to get out of the car and assist?**

The call-out-and-assist that Access-a-Ride ("AAR") offers will not change – it consists of a requirement that drivers of both broker cars and dedicated carriers call out the passenger's name when they arrive, and assist that passenger with getting into the vehicle.

Our proposal is to require additional training of drivers for the brokers when we issue our new broker RFP, including a new, separate training module on call-out-and-assist, as well as yearly re-training on call-out-and-assist.  Call-out-and-assist itself will not be changed, and will not require drivers to call the customer's mobile number; it does (already) require the driver to get out of the car to assist the passenger.

In terms of the plaintiffs' question about requiring drivers to call the customer's mobile number, at present the method AAR uses to contact a customer depends on whether the assigned AAR vehicle is a broker vehicle (black car) or a dedicated carrier (blue and white).  For broker vehicles, the passenger gets a text message from the dispatcher when the car is about 15 minutes from the pickup, which includes the drivers' cell phone number.  For dedicated carriers, if the driver is unable to find the passenger at the pickup location, the driver is required to call the dispatcher, who will then call the passenger to find out where he/she is.  If the passenger is unable to find the driver – both for broker vehicles and dedicated carrier vehicles – the passenger can call AAR and find out where the vehicle is.  We believe this to be sufficient.


**2.  For the written quiz, what determines the pass rate?**

After further discussion with our client, they have decided to take the quiz off the table in this settlement.  The primary purpose of the quiz was to ensure the drivers understand the call-out-and-assist requirements.  We have spent more time with AAR discussing the training that drivers receive, however, and believe that the types of training they receive (both a training module that is presented to them by their base, as well as practical hands-on training, and re-training every year) is sufficient to ensure they understand how to properly call-out-and-assist.  They also receive re-training if there is a complaint about a particular driver not calling out.

With regard to English proficiency of AAR drivers (which was not actually an issue raised in the Amended Complaint), that was always just a potential beneficial side effect of the quiz.  In order to get a license to drive an AAR paratransit (blue and white) vehicle, the driver must have a license which requires the driver to have

4

demonstrated English proficiency  (see FMCSA https://www.fmcsa.dot.gov/regulations/title49/section/391.11).

In addition, The New York City Taxi and Limousine Commission ("TLC") is the regulatory agency that licenses broker drivers. These drivers are licensed to provide service to the public including New Yorkers with disabilities that participate in the AAR program.  We do not think it is appropriate for NYCTA to impose language skills greater than those required by the State and City regulations governing this area. However, we note that TLC provides English learning resources and has developed English learning tools to help facilitate communication between drivers and customers and help drivers and anyone who wants to become a professional driver practice their English (see the "English Language Resource" tab found under https://www1.nyc.gov/site/tlc/drivers/driver-education.page).

In addition, in the rare circumstance that an AAR passenger cannot understand the TLC-licensed driver, the passenger can call AAR, which can address any concerns to ensure the customer's transportation needs are met by either answering the customer's question directly or by contacting the driver and acting as a relay between the driver and the customer.

We wish to remind the Court that the relevant standard here is comparable service to fixed route service.  On fixed-route service customers generally cannot communicate with train operators and only communicate in a limited fashion with bus operators.  There is no obligation for AAR's drivers to communicate with passengers generally, and any relevant trip-related questions that a passenger might have could equally be answered by the dispatcher.


**3.  What about legal fees?  I expected that question.  What amount of money are Defendants willing to put on the table toward legal fees?**

We were under the impression that Mr. Lee was not seeking legal fees, based on his statement during the mediation.  Moreover, given that we do not believe that we have any liability here, and the small changes that will be made to the system as a result of this lawsuit/settlement, we would not consider the plaintiffs to be a "prevailing party" such that Mr. Lee would be entitled to fees. We also have not received a demand for legal fees, so we have no idea what range of fees he would be seeking.

**4.  Plaintiff would want to issue a joint press release with Defendants announcing the resolution and apprising blind customers of these "additional features."   Is this something Defendants are amenable to?**

No.  As a matter of policy NYCT does not issue press releases of this nature, and particularly not in a case like this, where we do not believe we have any liability and are making these changes to the RFP solely to benefit our customers.

Respectfully submitted,
Helene Hechtkopf


Helene R. Hechtkopf
HOGUET NEWMAN REGAL & KENNEY LLP
One Grand Central Place
60 East 42nd Street, 48th Floor
New York, New York 10165
T 212.689.8808 | F 212.689.5101

This email transmission constitutes an electronic communication within the meaning of the Electronic Communications Privacy Act, 18 U.S.C. Section 2510, and its disclosure is strictly limited to the recipient(s) intended by the sender of this message. This transmission, and any attachments, may contain confidential attorney-client privileged information and attorney work product. Any unauthorized disclosure, copying, distribution or use of any of the information contained in or attached

to this transmission is prohibited. If you are not an intended recipient, please notify the sender by reply email and immediately delete and/or destroy the original transmission and any attachments.

**From:** Lehrburger NYSD Chambers <Lehrburger_NYSDChambers@nysd.uscourts.gov>
**Sent:** Thursday, April 9, 2020 9:08 AM
**To:** Helene Hechtkopf <hhechtkopf@hnrklaw.com>; Ira Lipton <ILipton@hnrklaw.com>; Lejla Hadzic <lhadzic@hnrklaw.com>; Miriam Manber <mmanber@hnrklaw.com>
**Subject:** Marrett v. MTA (19-cv-5144)

Counsel,

In continuing efforts to resolve this matter, I have communicated with Plaintiff counsel, indicating that Defendants would be willing to add certain requirements, which I specified, to the upcoming RFP. In response, Plaintiff counsel raised a few questions that I could not answer at the time and require your input:

1. What exactly do Defendants mean by call-out-and-assist -- will this include a requirement for the driver to call the customer's mobile number and to get out of the car and assist?

2. For the written quiz, what determines the pass rate?

3. What about legal fees? I expected that question. What amount of money are Defendants willing to put on the table toward legal fees?

4. Plaintiff would want to issue a joint press release with Defendants announcing the resolution and apprising blind customers of these "additional features." Is this something Defendants are amenable to?

If you would like to discuss by phone, please email chambers to arrange a time. Otherwise, you can simply respond to this email.

Thank you,

Hon. Robert W. Lehrburger, U.S.M.J.

Get Outlook for iOS